UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE MORSE, an individual, on behalf of herself and on behalf of all persons similarly situated,<br><br>                                             Plaintiff,<br>     vs.<br><br>MARIE CALLENDER PIE SHOP, INC., a Delaware Company; and Does 1 to 10,<br><br>                                             Defendant. | CASE NO. 09 CV 1305 JLS (POR)<br><br>**ORDER: (1) GRANTING PARTIES' JOINT MOTION; (2) GRANTING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE**; and **(3) DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>(Doc. Nos. 9, 12) |

Jamie Morse ("Plaintiff") initiated this putative class action on June 16, 2009 by filing a complaint against Marie Callender Pie Shop, Inc. ("Defendant"), and a First Amended Complaint ("FAC") on August 3, 2009.[1]  (Doc. Nos. 1, 6.)  Presently before the Court is Defendant's motion to dismiss various causes of action in the FAC on the grounds of collateral estoppel.  (Doc. No. 9.)

This motion was initially filed as a motion to dismiss or, in the alternative, for partial summary judgment.  (*Id.*)  On October 6, 2009, however, the parties filed a Joint Motion to Clarify Defendant's motion to dismiss, which contained various stipulations.  (Doc. No. 13.)  First, the parties stipulated to Brian McDonough's declaration that the positions of "Server Manager" and "Safety Manager" are not formal positions separate and distinct from the Assistant Manager position, correcting a factual

---

[1] The FAC was identical to the original complaint, except for the addition of the seventh cause of action for violation of the Private Attorneys General Act, Cal. Lab. Code. § 2698.

inaccuracy in the FAC. (*Id.* at 2.) Second, the parties stipulated that they anticipate Defendant's motion to be construed as a motion to dismiss and not a motion for partial summary judgment, and that the Court will consider the pleadings, the stipulated facts, and Defendant's request for judicial notice. (*Id.* at 2-3.) Finally, in the event the Court converts the Motion to a motion for summary judgment, Plaintiff reserved her right to apply for discovery or a continuance. (*Id.* at 3.)

Having duly considered the Joint Motion and the papers, the Court hereby **GRANTS** the Joint Motion and **GRANTS** Defendant's request for Judicial Notice. The Court does not convert Defendant's motion to a motion for summary judgment, but instead decides the motion to dismiss based on the stipulated facts in McDonough's declaration, the request for Judicial Notice, and the pleadings. Accordingly, for the reasons stated below, the Court finds that Plaintiff is not barred from asserting this action on the grounds of collateral estoppel and thus **DENIES** Defendant's motion to dismiss.

## BACKGROUND

Defendant Marie Callender Pie Shop, Inc. operates a restaurant chain of over 60 restaurants across California and throughout nine states. (FAC at ¶ 4.) On August 30, 2002, Sandra Hooper filed a putative class action in Los Angeles County Superior Court against Marie Callender Pie Shop, Inc. (the "Hooper" case) on behalf of a putative class of current and former general managers and assistant managers who worked in excess of 8 hours a day and/or more than 40 hours a week without being paid overtime compensation. (*See* Defendant's Request for Judicial Notice ("RJN"), Ex. A at 2-3.) The class period was defined as August 30, 1998 to the filing of the Complaint on August 30, 2002 (*Id.* at -3.) The complaint asserted various causes of action stemming from the alleged misclassification of the managers as being exempt from overtime requirements, including failure to pay overtime compensation, unfair competition in violation of Cal. Bus. & Prof. Code § 17200, conversion, and breach of the implied covenant of good faith and fair dealing. (*See generally id.*) Essentially, the Hooper plaintiffs alleged that they were not exempt from overtime payment under the executive or administrative exemptions because less than 50% of their work was spent on exempt activities, and that more than 50% was spent on non-exempt activities such as greeting customers, taking orders, cleaning and organizing storage areas,

1  and assisting in the preparation of the food, among others.  (*See id.* at ¶ 25.)  The Hooper
2  complaint also alleged that the managers lacked discretion and independent judgment because they
3  were required to strictly comply with company-wide policies and had no authority to hire or fire
4  employees.  (*Id.*)

5  After extensive discovery and litigation of the issues, the Hooper plaintiffs filed a Motion
6  for Class Certification, arguing that class certification was appropriate because Marie Callender's
7  classified its assistant manages on a corporate-wide basis and had various policies, procedures and
8  directives with which the Hooper plaintiffs alleged all general and assistant managers were
9  required to "strictly comply." (*See* RJN, Ex. B at 4, 6-8 ("MCC"); *see also* RJN, Ex. C.
10  (Declarations of plaintiffs emphasizing the policies and protocols that they alleged they must
11  comply with).)  In opposition to the Motion for Class Certification, Marie Callender's submitted
12  evidence to establish that the actual duties of the managers varied from day to day, store to store,
13  and manager to manager. (*See* RJN, Ex. D. at 5-6.)

14  On July 21, 2003, the court denied the Hooper plaintiffs' Motion for Class Certification.
15  (*See* RJN, Ex. G ("Hooper Order").)  The court concluded that there was a common issue of law
16  regarding whether the members of the purported class were properly classified as exempt, but that
17  "common questions of fact [did] not predominate" because of the "numerous and substantial
18  questions affecting each individual class members' right to recover."  (Hooper Order at 1-2.)
19  These included the "factual difference [which] arise from different restaurant locations (46 to 49 in
20  differing communities), restaurant size, management style, etc."  (*Id.* at 2.)  The Hooper class
21  representatives' individual claims were thereafter settled, and the class action lawsuit was
22  dismissed wih prejudice.  (*See* RJN, Ex. I (Dimissal); Marsh Decl. at ¶ 11.)

23  On June 16, 2009, Plaintiff filed the present action in this Court on behalf of a purported
24  class of California restaurant assistant managers (the "Morse" or "present" case).  (Doc. No. 1.)
25  Plaintiff is a former assistant manager and brings the action on behalf of all former and current
26  "Assistant Managers" employed by Defendant.[2]  The Morse FAC alleges seven causes of action:

27
28  [2] The FAC actually brings the action on behalf of all employees in the position of "Assistant Manager," "Server Manager" and "Safety Manager."  (FAC ¶¶ 16-17, labeling the class "Assistant Employees.")  The parties Joint Motion, however, stipulates to the facts as declared by Brian

- 3 -                                                                                                     09cv1305

1. Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200; 2) Failure to Pay Overtime Wages in Violation of Cal. Lab. Code § 510, *et seq*; 3) Failure to Provide Wages When Due in Violation of Cal. Lab. Code § 203; 4) Failure to Provide Accurate Itemized Statements in Violation of Cal. Lab. Code § 226; 5) Failure to Provide Meal and Rest Periods in Violation of Cal. Lab. Code §§ 226.7 & 512; 6) Failure to Pay Compensation in Violation of 29 U.S.C. § 201, *et seq.*; and 7) a claim for penalties under the Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698 ("PAGA"). (Doc. No. 6.)

Defendant filed the present motion to dismiss on August 6, 2009, arguing that collateral estoppel precludes the purported class of California-based assistant managers from proceeding on a class-wide basis given the denial of class certification in the Hooper case. (*See* MTD at 1-2.) Defendant's motion to dismiss, however, seeks limited relief. Defendant recognizes that Plaintiff may pursue her individual claims against Defendant, but that "all claims to the extent they are asserted on behalf of California assistant managers" should be dismissed. (*Id.* at 2.) This includes all of the first five causes of action and the seventh cause of action, which only apply to California assistant managers, and the sixth cause of action (the FLSA claim), but only to the extent that the FLSA claim is asserted on behalf of assistant managers within California. (*Id.* at 2 & n.2.)

After filing a Joint Motion clarifying Defendant's motion to dismiss (as discussed above), Plaintiff filed an opposition to the Motion to Dismiss on October 8, 2009. (Doc. No. 14.) Defendant filed its reply on October 19, 2009. (Doc. No. 17.) A hearing scheduled for December 10, 2009 was thereafter vacated and the matter was taken under submission to be decided on the papers. (Doc. No. 21.)

**LEGAL STANDARDS**

**I.    Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and

---

McDonough, which is that there are no formal "Server Manager" or "Safety Manager" positions outside the general position of "Assistant Manager." (*See* Doc. No. 12 at 2-3.)

1  sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain
2  statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not
3  require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-
4  defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, – US — , 129 S. Ct. 1937, 1949
5  (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a
6  plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than
7  labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."
8  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a
9  complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*,
10 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

11 "To survive a motion to dismiss, a complaint must contain sufficient factual matter,
12 accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*,
13 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts
14 pled "allow[] the court to draw the reasonable inference that the defendant is liable for the
15 misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must
16 be probable, but there must be "more than a sheer possibility that a defendant has acted
17 unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible
18 entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept
19 as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific
20 analysis involving the Court's "judicial experience and common sense." *Id.* at 1950 (citation
21 omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere
22 possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is
23 entitled to relief.'" *Id.*

24 **II.    Collateral Estoppel**

25 "Collateral estoppel precludes relitigation of issues argued and decided in prior
26 proceedings." *Lucido v. Superior Court*, 51 Cal. 3d 335, 341 (1990). "Assuming a full and fair
27 opportunity to litigate . . . federal courts must accord preclusive effect to state court judgments."
28 *Marquez v. Guitterez*, 51 F. Supp. 2d 1020, 1026 (E.D. Cal. 1999) (citations omitted). In order to

apply collateral estoppel under California state law, five elements must be established:

> (1) the issue must be identical to that decided in the prior proceedings; (2) the issue must have been actually litigated in the prior proceeding; (3) the issue must have been necessarily decided in the prior proceeding; (4) the decision must have been final and on the merits; and (5) preclusion must be sought against a person who was a party or in privity with a party to the prior proceeding.

*Alvarez v. May Dep't Stores*, 143 Cal. App. 4th 1223, 1233 (2006); *see also Castillo v. City of Los Angeles*, 92 Cal. App. 4th 477, 481 (2001). "The party asserting collateral estoppel bears the burden of establishing these requirements." *Pacific Lumber v. SWRCB*, 37 Cal. 4th 921, 943 (2006). Further, the court should consider the public policies underlying collateral estoppel to determine "whether its application in a particular circumstances would be fair to the parties and constitutes sound judicial policy." *Lucido*, 51 Cal. 3d at 343.

In the context of class certification, collateral estoppel may be used "to preclude relitigation of issues finally resolved as part of a class certification determination in a prior proceeding." *Johnson v. GlaxoSmithKline, Inc.*, 166 Cal. App. 4th 1497, 1510 (2008); *see also Alvarez*, 143 Cal. App. 4th at 1233; *In re Bridgestone/Firestone, Inc., Tires Products*, 333 F.3d 763, 768-69 (7th Cir. 2003).

## DISCUSSION

### I.   Collateral Estoppel Requirements

Defendant contends that the denial of class certification precludes the litigation of the present action on a class-wide basis:

> Like the claims in the Hooper case, each cause of action in the Morse case arises from the core allegation that the assistant managers were misclassified as exempt from overtime requirements and, accordingly, that the Company failed to pay them overtime compensation (and in the Morse case, comply with other wage and hour laws pertaining to non-exempt employees as required by law).

(MTD at 8-9.) Defendant argues that the factual allegations in support of the misclassification are the same as in the Hooper case, as well. (*Id.* at 9.) Thus, the Court must determine whether the five elements of collateral estoppel have been established in order to bar the class-wide claims in the present action.

### A.   Identity of Issues

Defendant argues that both the Hooper case and the present case involve the same legal

1  issue: "whether the alleged misclassification of Marie Callender's restaurant assistant managers
2  can be determined on a class-wide basis." (MTD at 11.) Further, Defendant argues that both cases
3  "involve virtually identical factual and legal allegations and theories of liability." (MTD at 12.)
4  　　　　As Defendant correctly notes, even though the exact causes of action are different in the
5  two cases, the central issue for purpose of collateral estoppel is Plaintiff's right to litigate the
6  claims on the grounds that the class members were misclassified as exempt as a class action
7  lawsuit. This is the identical issue which was decided in Hooper. *See Alvarez v. May Dep't Stores*
8  *Co.*, 143 Cal. App. 4th 1223, 1237 (2007) (finding that "the principal of collateral estoppel does
9  not depend on the legal theory used but the primary right asserted" and that the "primary right
10 asserted in each case was the right to litigate claims in a class action lawsuit"); *see also Mauro v.*
11 *Federal Express Corp.*, 2009 WL 190506, at *2-3 (C.D. Cal. June 1, 2009) (holding that "[t]he
12 central criterion in determining whether there is an identity of claims between the first and second
13 adjudications is whether the two suits arise out of the same transactional nucleus of facts" and
14 finding that the allegations in both cases, "FedEx's alleged failure to provide meal and rest breaks
15 to FedEx drivers" met this standard (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d
16 708, 714 (9th Cir. 2001)).
17 　　　　The identity of issues analysis, therefore, turns on whether the differences in the class
18 definitions defeat the identity of the issues. The Hooper Motion for Class Certification sought to
19 define the class as "all former or current Assistant Managers and General Managers employed by
20 Marie Callender's Pie Shops, Inc. . . . who have worked more than eight (8) hours on any day
21 and/or more than forty (40) hours during any week since August 30, 1998, and have not been paid
22 overtime compensation." (RJN, Ex. B at 2.) The FAC in the present case seeks to bring the class
23 action on behalf of Plaintiff and a "Class consisting of all individuals who are or previously were
24 employed by Defendant Marie Callenders in a position entitled "Assistant Manager" . . . during the
25 Class Period. The class period . . . is defined as the period beginning four years prior to the filing
26 of this Complaint and ending on the date of as [*sic*] determined by the Court." (FAC ¶ 16.)
27 Therefore, the primary differences in the purported class are that the Hooper case included General
28 Managers in addition to the Assistant Managers and the time period in the Hooper case was from

roughly 1998 to 2002, whereas the present case includes only Assistant Managers who worked or work for Defendant as of August 2005 until either the filing of the complaint or other date as determined by the Court.

Defendant argues that these "minor differences" in the class definition do not preclude collateral estoppel, as there are "purely superficial and do not relate to or change the central identical issue in each matter." (MTD at 18.)  Specifically, Defendant argues that the denial of class certification in Hooper was not based on the differences between general and assistant managers, but rather the differences common to all managers. (*Id.*)  In fact, Defendant in Hooper did not oppose class certification based on the differences between general and assistant managers, but instead cited differences common to all managers, such as "the day of the week, the time of the year, the size, location, sales volume, hours of operation, type of store, hourly and management staffing, whether stores have bookkeepers or kitchen managers, the unique and individual-specific management style of each [assistant manager] and [general manager], as well as innumerable other unanticipated events and issues that each manager must deal with on a daily basis, but which are incapable of description or quantification on a class-wide basis." (RJN, Ex. D at 5-6.)  The Hooper court's denial also did not distinguish between general and assistant managers, instead holding that "[t]he relevant facts are significantly different for each Manager and Assistant Manager.  Significant factual differences arise from different restaurant locations, . . . restaurant size, management style, etc." (RJN, Ex. G at 2.)

Defendant cites *Frosini v. Bridgestone Firestone North American Tire, LLC*, 2007 WL 2781656 (C.D. Cal. 2007).  In *Frosini*, the court found that the issue presented in the first case – "whether a class may be certified to litigate claims seeking damages for economic loss and equitable relief based on allegedly defective Steeltex tires" – was "substantially identical" to the issue in the subsequent case.  2007 WL 2781656 at *9.  In the first case, the purported class included persons in the United States who purchased a vehicle with Steeltex tires manufactured in one of five plants between 1995 and the time of the class certification (denied in 2006).  *Id.*  In the subsequent case, the plaintiff sought to certify a class of persons who reside in California who purchased a vehicle with the Steeltex tires manufactured at one of three plants in California

between 1998 and 2003. *Id*. The *Frosini* court found that "Plaintiffs' attempt to distinguish the present action from [the first action] by narrowing the proposed class to California residents does not alter the application of collateral estoppel" because the court in the first action rejected a nationwide class based on disparate legal issues as well as a subclass of California-only purchasers "on the grounds that the proposed class raised a plethora of individual issues . . ." *Id.*

Plaintiff, however, argues that "the issues must be identical – not merely similar, or even substantially similar. . . . [This] serves the important purpose of ensuring that the rights of those estopped are not unnecessarily circumscribed." *Campbell v. PricewaterhouseCoopers, LLP*, 2007 WL 841694, *2 (E.D. Cal. Mar. 20, 2007); *see also Bibo v. Federal Express, Inc.*, 2009 WL 1068880 (N.D. Cal. Apr. 21, 2009) ("[N]on-identical classes justify the denial of a collateral estoppel claim . . ."); *Bufil v. Dollar Fin. Group, Inc.*, 162 Cal. App. 4th 1193, 1203 (2008) (holding that collateral estoppel does not apply, agreeing with the plaintiff "that the classes in the two cases are not the same and thus the issues are different. . . . Unlike Alvarez, the class that Bufil asserts is not identical to the class asserted by Chin.")

In *Bufil*, however, the Court not only found that the classes were not identical, but concluded that, unlike in *Alvarez*, the issue upon which the court denied the class certification was cured by the narrowing of the class. 162 Cal. App. 4th at 1203-04. This is significant. The *Bufil* court reversed the lower court's finding that "the same class problems involving liability [commonality] are implicated here." *Id.* at 1203. Instead, the court stated:

> The [lower] court made an erroneous assumption that each class member would need to testify as to his or her understanding of the meal period waiver. The *was* an issue in [the first action] but it is irrelevant to Bufil's lawsuit. . . . Under Bufil's structuring of the case, the court could identify the class from Dollar's records and determine liability as a matter of law. In this case Bufil proposes a class that on its face attempts to correct flaws identified in the [first] lawsuit resulting in denial of certification.

*Id.* at 1203-04.

The same is not the case here – the purported class in this action does not cure or attempt to cure the deficiencies found in the Hooper case which led the court to deny certification. Instead, the Court finds that, as in *Frosini*, the narrowing of the class to include only assistant managers

1    does not alter the application of collateral estoppel.³  The Hooper court denied the class

2    certification based on its finding that class-wide questions of fact did not predominate over

3    individual factual inquiries that pertained to all managers, both general and assistant.  These same

4    factual differences, including different restaurant locations and size and management style, remain

5    for a class consisting only of assistant managers.  Further, the difference in time periods does not

6    defeat the identity of issues at this stage in the litigation, as the FAC does not indicate any changed

7    circumstances since the class period in Hooper and the class period asserted in this action.  To be

8    sure, the burden is on Defendant to establish identity of issues, *see Pacific Lumber,* 37 Cal. 4th at

9    943, but Defendant has met this burden by setting forth the materially identical allegations in this

10   case and the Hooper case despite the differing time period (*see* MTD at 9), and Plaintiff does not

11   oppose these allegations.⁴  Thus, the central issue – whether this misclassification action can

12   properly be litigated on a class-wide basis – is unchanged by the differing putative classes, and the

13   Court finds sufficient identity of issues to satisfy this requirement of collateral estoppel.

**B.     Full and Fair Opportunity to Litigate and Final Decision on the Merits**

15   Defendant also contends that the next three elements – that the issue was actually litigated

16   and necessarily decided in the prior proceeding and that the decision was final and on the merits –

17   have been satisfied here:

18   > The court [in Hooper] reached [its] conclusion after fully considering the plaintiffs'
>    assertions that Company policies and standards controlled the assistant managers' work,
19   > that they did not exercise independent judgment or discretion, lacked real supervisory
>    authority in their position and primarily performed non-exempt duties.  Of course, these are
20   > the same assertions raised by Morse in this case.

21   (MTD at 20.)  Further, the denial of class certification is a "final judgment" for purposes of

22   collateral estoppel because it is a "prior adjudication of an issue in another action that is

---

24   ³ Plaintiff also argues that the different standards for class certification under California state law, as used in the Hooper case, are similar but not identical to the standards under Federal law. (Opp. at 7.)  The Court disagrees.  While the standards are not identical, the central issue of whether common questions of fact predominate over individualized inquiries is present in both (and with little analytical differences).  *Compare* Cal. Code Civ. Proc. § 382 *with* Fed. R. Civ. P. 23; *see also* MTD at 12 (citing both federal and state cases asserting standard of commonality and predominance).

28   ⁴ Instead, Plaintiff argues that Defendant did not present evidence that the conduct and facts did not change.  This is not Defendant's burden, as Defendant must establish that the issues are the same in this action as in the Hooper case, which Defendant did so by pointing to the materially identical allegations in both cases despite the differing class periods.

1  determined to be sufficiently firm to be accorded conclusive effect." *In re Brigestone/Firestone*,
2  333 F.3d at 767 (quoting Restatement (Second) of Judgments § 13 (1980)).  In Hooper, after the
3  denial of class certification, the representatives settled their individual claims and the court
4  dismissed the class action claims with prejudice, as no appeal was filed.  (Marsh Decl. at ¶ 10-11;
5  RJN, Ex. I.)  This adjudication is "sufficiently firm to be accorded conclusive effect." *See*
6  *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903, 911 (1986).

7  In its opposition, Plaintiff does not oppose these three requirements.  Accordingly, the
8  Court finds that the Hooper judgment was a final judgment on the merits, necessarily decided after
9  the issue had been fully and fairly litigated in satisfaction of these three collateral estoppel
10 requirements.

11 **C.   Privity of the Parties**

12 The final requirement is that Plaintiff in the present case must have been a party in the prior
13 proceeding or in privity with a party to the prior proceeding.  Defendant was not a party to the
14 Hooper proceeding, but Defendant contends that Plaintiff is in privity with the Hooper plaintiffs
15 because Plaintiff was "virtually represented" in the prior action. "Collateral estoppel requires that
16 the party in the earlier case have interests sufficiently similar to the party in the later case, so that
17 the first party may be deemed the 'virtual representative' of the second party." *Alvarez*, 143 Cal.
18 App. 4th at 1236 (citing *Citizens for Open Access v. Seadrift Assn.*, 60 Cal. App. 4th 1053, 1070-
19 73 (1998)). "The emphasis is not on a concept of identity of parties, but on the practical situations.
20 The question is whether the non-party is sufficiently close to the original case to afford application
21 of the principle of preclusion." *Id.* (quoting *People ex rel. State of CA v. Drinkhouse*, 4 Cal. App.
22 3d 931, 937 (1970)).  Thus, "[w]hether someone is in privity with the actual parties requires close
23 examination of the circumstances of each case." *People v. Henderson*, 225 Cal. App. 3d 1129
24 (1990).

25 Defendant contends that Plaintiff is in privity with the Hooper plaintiffs because both have
26 identical interest in the rights asserted and that the Hooper plaintiffs had a strong motive to assert
27 that interest.  Thus, Defendant argues that Plaintiff's interests were sufficiently similar to the
28 Hooper interests so that they are deemed "virtual representatives" of Plaintiff. *See Alvarez*, 143
Cal. App. 4th at 1326; *see also Gottlieb v. Kest*, 141 Cal. App. 4th 110, 150 (2006) (stating that, in

the privity context of collateral estoppel, "adequacy of representation" means that "the party [in the prior action] had the same interest as the party to be precluded, and . . . had a strong motive to assert that interest" (citations omitted)).

In response, Plaintiff argues that no privity exists between Plaintiff and the Hooper plaintiffs because Plaintiff was never part of the putative class in Hopper, nor could she have been. (Opp. at 8.) Plaintiff did not begin to work as an Assistant Manager until two years following the ruling in Hooper, and therefore could not have been part of the class sought to be certified. (*See* FAC at ¶ 7.) Plaintiff argues that *Alvarez* and other cases cited by Defendant which found privity existed were cases filed by plaintiffs who were unnamed or absent class members in the prior action, and that privity is limited to such parties. (Opp. at 8.) The Court agrees.

In *Alvarez*, the court found that privity existed between the parties. However, in *Alvarez*, the class in the first action included, by definition, the plaintiff in the second action. *Alvarez*, 143 Cal. App. 4th at 1237. In fact, the only difference the court could "discern between the parties [was] the name of the representative plaintiff." *Id.* at 1238. Thus, while the court did not explicitly limit its holding to only applying collateral estoppel to bar subsequent actions by "absent putative class member[s]," this factor clearly influenced the court's holding. *Id.*; *see also In re Bridgestone/Firestone*, 333 F.3d at 769 ("Our suit . . . was commenced as a class action, and one vital issue was litigated and resolved on a class-wide basis: whether a national class is tenable. Absent class members are bound provided that the named representatives and their lawyers furnished adequate representation, which they did.")[5]

The Court finds no reason to expand privity to those parties beyond the absent or unnamed parties in the first putative class, as this would prevent any litigation against Defendant for an indeterminate length of time. Defendant argues that if the Court were to so limit the privity concept, "then it would mean that any employee who stepped into an allegedly misclassified job after denial of class certification in the first case could force the employer to relitigate the class

---

[5] The Seventh Circuit in *Bridgestone/Firestone* went on to discuss when unnamed class members should be bound be decision pre-certification and found that they are: "Every person included in the district court's class definition still has the right to proceed on his own. What such a person now lacks is the right to represent a national class of others similarly situated; that's the upshot of a fully contested litigation in which every potential class member was adequately represented on this issue." 333 F.3d at 769.

1  certification issue even though every other employee in the putative class in the second case was a
2  member of the putative class in the first." (Reply at 8.) The Court appreciates this argument but
3  believes it overstates the situation. Whether the class proposed by Plaintiff will in fact be certified,
4  and for which class period, is an open question, but given that Plaintiff was not nor could she have
5  been a member of the prior litigation, the Court finds it inappropriate to bind Plaintiff to that
6  decision. In *Alvarez*, the court recognized that "the circumstances are such that appellants should
7  reasonably have expected to be bound by the [first] decision. As appellants would have enjoyed
8  the fruits of a favorable outcome, fairness dictates that they should be bound by the effect of the
9  decision against them." 143 Cal. App. 4th at 1238. Here, however, Plaintiff could not have
10 received the "fruits of the favorable outcome" and therefore should not be bound by the
11 unfavorable outcome.

12      Moreover, the *Alvarez* court's finding of privity is even more distinguishable in the present
13 case. In *Alvarez*, the court not only recognized that the plaintiff in that case was an unnamed
14 plaintiff in the prior litigation, the court also noted that the interested parties were the same class of
15 employees in both proceedings, the issues were identical, the time period was approximately the
16 same, and the class counsel was the same. *Id.* at 1237-38. Thus, the only difference was the name
17 of the representative plaintiff. *Id.* at 1238. Here, however, there are many more dissimilarities,
18 including the definition of the class of employees, the class period, and the class counsel. Thus,
19 the Court finds that Defendant has not met its burden of establishing privity between Plaintiff in
20 this case and the Hooper plaintiffs.

21      **D.    Public Policy**

22      The Court's final step in determining whether the doctrine of collateral estoppel applies is a
23 public policy consideration. "[T]he court must balance the rights of the party to be estopped
24 against the need for applying collateral estoppel in the particular case, in order to promote judicial
25 economy by minimizing repetitive litigation, to prevent inconsistent judgment which undermine
26 the integrity of the judicial system, or to protect against vexatious litigation." *Alvarez*, 143 Cal.
27 App. 4th at 1233. Defendant argues that public policy weighs in favor of applying collateral
28 estoppel because Plaintiff may still assert her individual claims even though she is barred from
serving as a class representative. *See Alvarez*, 143 Cal. App. 4th at 1238 (stating that "applying

the doctrine of collateral estoppel [to preclude class claims] does not lead to an unfair result, as [plaintiff] remains free to litigate the merits of their personal claims").  Defendant further contends that it would be "manifestly unfair" to subject it to a "revolving door of endless litigation."  *Id.* at 1240.

While the Court appreciates that Defendant should not be subject to a "revolving door of endless litigation," the situation in *Alvarez* in which an unnamed plaintiff simply became the new representative plaintiff in the subsequent action is not the same as in the present case, where years have passed and Plaintiff was not a member of the prior putative class.  *See Alvarez*, 143 Cal. App. 4th at 1238. Thus, public policy weighs in favor of not binding such a Plaintiff to a decision in which the Court finds she was not represented, virtually or otherwise, and would not have received the fruits of a beneficial outcome of that prior litigation.

Furthermore, while Plaintiff's individual claims may survive, the reality of the situation is that Plaintiff will be adversely affected by not being able to attempt to litigate this action on a class-wide basis.  *See Gentry v. Superior Court*, 42 Cal. 4th 443, 456-7 (2007) (recognizing the practical implications of an employee bringing a cause of action against an employer in the absence of a class action).  Thus, the Court finds that public policy weighs in favor of not applying the doctrine of collateral estoppel to preclude the present litigation.[6]

## CONCLUSION

For the reasons stated above, the Court finds that Plaintiff is not collaterally estopped from asserting the present action and therefore **DENIES** Defendant's motion to dismiss.

**IT IS SO ORDERED.**

DATED: February 22, 2010

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge

---

[6] Plaintiff asserts several other arguments against the application of collateral estoppel, such as the allegedly intervening decision in *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319 (2004) and arguments particular to the FLSA and PAGA claims.  Because the Court finds that collateral estoppel is not applicable in this case based on the basic principles of the doctrine, the Court declines to address these remaining issues.