# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE MORSE, et al., <br><br> Plaintiffs, <br> vs. <br><br> MARIE CALLENDER PIE SHOPS, INC., et al., <br><br> Defendants. | CASE NO. 09CV1305 JLS (POR) <br><br> **ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** <br><br> (Doc. Nos. 48, 54, & 55.) |

Presently before the Court is Plaintiffs' motion for class certification. Plaintiffs seek to certify five claims related to overtime pay and rest and meal periods. The class is defined as all those individuals employed by Defendants Marie Callender Pie Shop, Inc. and Perkins & Marie Callender's Inc. who were classified as exempt and worked in a position with the title "Assistant Manager" during the period June 15, 2005 to July 26, 2009. After consideration, the Court **DENIES WITH PREJUDICE** Plaintiffs' motion because Plaintiffs—proceeding under Rule 23(b)(3)—fail to show that questions of law or fact common to class members predominate over questions affecting only individuals.

## BACKGROUND

Between June 15, 2005 and July 26, 2009, Defendants owned and operated over sixty restaurants in California. (Doc. No. 52 at 2.) Each plaintiff was employed by Defendants as an "Assistant Manager." (Doc. No. 38 (Consol. Compl.) at 5–6.)

In California, an employer must pay overtime wages for work performed in excess of eight hours in one day or forty hours in one week. Cal. Labor Code § 510(a). An employer must also provide an employee with a thirty-minute meal period in each five-hour work period and a ten-minute rest period for each four hours worked. Cal. Code Regs. tit. 8, § 11050(11)(A), (12)(A). If the employer fails to provide meal or rest periods, the employer must pay one additional hour of pay for each work day that the meal or rest period was not provided. Cal. Lab. Code § 226.7(b). Such rules do not apply, however, to a person employed in an executive or administrative capacity.

An employee subject to the executive exemption is one:

(a) Whose duties and responsibilities involve the *management of the enterprise in which he or she is employed or of a customarily recognized department or subdivision thereof*; and
(b) Who customarily and regularly directs the work of two or more other employees therein; and
(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
(d) *Who customarily and regularly exercises discretion and independent judgment*; and
(e) *Who is primarily engaged in duties which meet the test of the exemption* . . . .
(f) Such an employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment . . . .

Cal. Code Regs. tit. 8, § 11050(1)(B)(1) (emphasis added).

An employee subject to the administrative exemption is one:

(a) Whose duties and responsibilities involve . . . :
    (i) The *performance of office or non-manual work directly related to management policies or general business operations* of his employer or his employer's customers; . . . and
(b) *Who customarily and regularly exercises discretion and independent judgment*; and
(c) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity . . . .; or
(d) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge; or
(e) Who executes under only general supervision special assignments and tasks; and
(f) *Who is primarily engaged in duties which meet the test of the exemption* . . . .
(g) Such an employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment . . . .

Cal. Code Regs. tit. 8, § 11050(1)(B)(2) (emphasis added).

///

1       Plaintiffs allege that Defendants improperly classified Assistant Managers as
2 exempt employees pursuant to the executive and administrative exemptions. As a result,
3 Assistant Managers were denied overtime pay and proper meal and rest breaks. (Consol.
4 Compl. at 13.) This denial forms the basis for Plaintiffs' first five causes of action: 1)
5 Violations of California Business Code § 17200; 2) Failure to pay overtime wages in
6 violation of California Labor Code § 510; 3) Failure to pay wages owed in violation of
7 California Labor Code §§ 201, 202, and 203; 4) Failure to provide an accurate itemized
8 statement of wages earned in violation of California Labor Code § 226; and 5) Failure to
9 provide meal and rest breaks in violation of California Labor Code §§ 226.7 and 512.

10       Plaintiffs believe these five claims are suitable for class certification and request
11 certification of a class containing "those individuals employed by Defendants Marie
12 Callender Pie Shop, Inc. and Perkins & Marie Callender's Inc. . . . who were classified as
13 exempt and worked in a position with the title 'Assistant Manager' during the period
14 June 15, 2005 to July 26, 2009." (Doc. No. 48 (Mem. ISO) at 1.) Plaintiffs rely on Rule
15 23(b)(3), arguing that the class members are "sufficiently cohesive to warrant
16 adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).

17 **LEGAL STANDARD**

18       At the class certification stage, the question is not whether Plaintiffs "have stated a
19 cause of action or will prevail on the merits, but rather whether the requirements of Rule
20 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). In this case, Plaintiffs
21 bear the burden of satisfying Rule 23(a) and Rule 23(b)(3). *See Zinser v. Accufix Research*
22 *Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). And because Plaintiffs fail to satisfy Rule
23 23(b)(3)'s predominance requirement, the Court declines to discuss the rest of Rule 23.

24       Rule 23(b)(3) permits a class action where "the court finds that the questions of law
25 or fact common to class members predominate over any questions affecting only
26 individual members . . . ." Fed. R. Civ. P. 23(b)(3). The predominance inquiry focuses on
27 "the relationship between the common and individual issues" and "tests whether
28 proposed classes are sufficiently cohesive to warrant adjudication by representation."

1 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (internal citation and
2 quotations omitted). The inquiry reflects 23(b)(3)'s purpose: "to cover cases in which a
3 class action would achieve economies of time, effort, and expense, and
4 promote . . . uniformity of decision as to persons similarly situated, without sacrificing
5 procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615
6 (internal quotations omitted). As a result, a central focus is whether "adjudication of
7 common issues will help achieve judicial economy." *Zinser*, 253 F.3d at 1189.

## DISCUSSION

9     The Court begins by looking at the underlying claims and what issues must be
10 resolved at the merits stage. Only by doing so can the Court determine whether Plaintiffs
11 establish common issues that can be resolved class-wide.

12     Plaintiffs brings suit on the back of Defendants' decision to uniformly classify all
13 Assistant Managers as exempt employees pursuant to the executive and administrative
14 exemptions. At the merits stage, Defendants bear the burden of establishing every factor
15 required to classify an employee as an executive or an administrator.

16     Under California law, whether an employee is exempt as an executive or
17 administrator requires a fact-intensive inquiry because the determination "must be based
18 on a review of the actual job duties performed by [the] employee." *See In re United Parcel*
19 *Serv. Wage and Hour Cases*, 190 Cal. App. 4th 1001, 1014–15 (2010). For instance, both the
20 executive and administrative exemptions require an employee be primarily engaged in
21 exempt work. *See* Cal. Code Regs. tit. 8, § 11050(1)(B)(1), (B)(2). To determine whether
22 this requirement is met, the Court must examine "the amount of time the employee
23 spends on such work, together with the employer's realistic expectations and the realistic
24 requirements of the job." *Id.*

25     Because the exemptions require a fact-intensive, individualized inquiry anathema
26 to Rule 23(b)(3), Plaintiffs must establish the presence of common questions. This can be
27 done via the existence of company wide policies or uniform work duties and experiences
28 that would diminish the need for individualized inquiry. *See Vinole v. Countrywide Home*

*Loans, Inc.*, 571 F.3d 935, 947 (9th Cir. 2009). And pursuant to Rule 23(b)(3), the common questions must predominate over any individual ones.

The Court finds that Plaintiffs fail to establish the existence of common questions that predominate over any individualized inquiries. To begin, the Court recognizes that Defendants once uniformly categorized all Assistant Managers as exempt. (Mem. ISO at 7.) The Court also recognizes that sometime after the filing of this lawsuit, Defendants recategorized all Assistant Managers as non-exempt. (*Id.*) But Defendants' ability to uniformly categorize its employees "says little about the main concern in the predominance inquiry: the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). Thus, this fact weighs little, if at all, in the predominance inquiry.

Instead of resting on the common classification, Plaintiffs propose common questions via a task-based analysis. Plaintiffs' theory utilizes the following framework: 1) There is a set of tasks "T"; 2) All Assistant Managers performed only the tasks found in"T"; 3) All of the tasks in "T" are of "X" nature instead of "Y" nature; 4) Defendants disagree; and thus 5) A common question is whether the tasks in "T" are of "X" or "Y" nature.

Plaintiffs utilize the framework to produce several common questions focusing on the exemptions. As shown before, each exemption has several requirements. At the merits stage, Defendants must establish every requirement for every employee it wishes to classify as exempt. Plaintiffs assert that several of the requirements can be resolved class-wide. And if issues existed that could resolve the exemptions on a class-wide basis, such issues would predominate over any individual inquiries.

For example, the administrative exemption requires Defendants to establish, among other things, that an employee performs "office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers." Cal. Code Regs. tit. 8, § 11050(1)(B)(2). Pursuant to the framework, Plaintiffs argue that 1) There are a set of tasks in the Management Loop; 2)

1  All Assistant Managers performed only the Management Loop; 3) All of the tasks in the
2  Management Loop are not "office or non-manual work directly related to management
3  policies or general business operations of his employer or his employer's customers"; 4)
4  Defendants must disagree—otherwise Defendants would not be able to establish the
5  exemption; and thus 5) There is a common question as to whether all of the tasks in the
6  Management Loop are "office or non-manual work . . . ." (Doc. No. 61 at 8). This
7  reasoning is repeated for the executive exemption's requirement regarding the
8  management of an enterprise or department or subdivision, (*Id.* at 5), and both
9  exemptions' requirement regarding the use of discretion or independent judgment. (*Id.*)

10  Two requirements must be met in order for Plaintiffs' theory and framework to
11  create predominant questions. First, there must be a bucket of tasks that can be
12  scrutinized as a whole. Second, every Assistant Manager can only perform tasks found
13  within that bucket. If there are tasks beyond those in the bucket, it is possible that
14  Assistant Managers performed those tasks. And even if the tasks in the bucket would
15  render the exemptions inapplicable, the Court would have to perform an individualized
16  analysis regarding each Assistant Manager's performance of non-bucket tasks, thereby
17  removing the common question's predominance.

18  These two requirements spell disaster for Plaintiffs. Plaintiffs hold an absolute and
19  unwavering reliance on the Management Loop as its bucket. Plaintiffs argue, for
20  instance, that the "Assistant Managers were uniformly trained in and provided with the
21  standard, corporate 'Management Loop' procedures by which they were required to refill
22  beverages, clear plates, cash out customers, and greet and say good-bye to customers."
23  (Mem. ISO at 5.) And Plaintiffs cite to—and bold—instances in which Assistant
24  Managers spent time "working the floor pursuant to the loop." (*Id.* at 8, 15.)

25  But while the Court must accept Plaintiffs' allegations as true, the Court is
26  nonetheless permitted to "consider evidence which goes to the requirements of Rule 23
27  even though the evidence may also relate to the underlying merits of the case." *Hanon v*
28  *Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir 1992). And the record before Court

1  contradicts the notion that the Management Loop constituted the entire scope of an
2  Assistant Manager's duties. In other words, the Management Loop, and the tasks within
3  it, is far from the only bucket; non-Management Loop tasks exist.
4       Marie Callender's University (Doc. 48-4 at 175) is a document given to Assistant
5  Managers. (*See* Mem. ISO at 13.) Of the document's eighty-four pages, four are
6  dedicated to the Management Loop. (Doc. No. 48-4 at 201.) The rest of the document
7  contains a panoply of tasks and duties. They include: 1) the "SWOT" plan—used to
8  "ensure success each and every shift" (*Id.* at 195); 2) guidance on coaching and
9  developing employees—indicating that a manager's job is to "teach, train, and inspire all
10 members of the team" (*Id.* at 197); 3) guidance as to utilizing the back office computers
11 (*Id.* at 208); and 4) guidance as to counseling employees (*Id.* at 210).
12      Similarly, the parties provide voluminous declarations and deposition testimony
13 that depict wildly varying duties. (*See* Doc No. 52-2, Exs. 4–28; Mem. ISO, Exs. 9–26.)
14 And many reported duties are not found in the Management Loop. For instance, one
15 Assistant Manager would set the "'pars' or daily cooking and baking goals for the day"
16 and hire individuals. (Doc. 52-2, Ex. 4). Another "worked with the other managers to
17 create the store's monthly financial forecast, which predicted customer volume and
18 revenues for the month." (*Id.*, Ex. 5). And another spent time "creating schedules for all
19 employees in the restaurant." (*Id.*, Ex. 9.)
20      The fact that there is more than one bucket of tasks defeats Plaintiffs' theory of
21 common questions. Plaintiffs make no allegations regarding the non-Management Loop
22 tasks. And the Court has no basis for finding that those tasks can be lumped with the
23 Management Loop. Thus, even if the Court could perform a task-based analysis on the
24 Management Loop, that analysis would not predominate over individualized questions.
25 At the merits stage, the Court would be required to determine the character of non-
26 Management Loop tasks, and how much time, if any, Assistant Managers spent
27 performing those tasks.
28 ///

Based on this record, the Court cannot find that questions common to the class predominate over questions affecting only individual members. Plaintiffs' propose the existence of common questions based on the set of tasks Assistant Managers performed. Plaintiffs argue that it is a common question whether performing this set of tasks would defeat the exemptions. Problematically, however, the record does not present the Court with one set of tasks to analyze. Although Plaintiffs proffer the Management Loop as the only set of tasks Assistant Managers performed and request the Court analyze those tasks, the record indicates Assistant Managers did much more than the Management Loop. And because the Court would have to consider those other tasks at the merits stage, an individualized inquiry for each employee would be necessary.

## CONCLUSION

Plaintiffs motion this court to certify five causes action under Rule 23(b)(3). The Court finds Plaintiffs fail to satisfy the predominance requirement of that Rule. As a result, the Court **DENIES WITH PREJUDICE** Plaintiffs' motion for class certification.[1]

**IT IS SO ORDERED.**

DATED: May 12, 2011

Honorable Janis L. Sammartino
United States District Judge

---

[1] Also before the Court are two motions to strike (Doc. Nos. 54 and 55) and an uncontested request for judicial notice. (Doc. No. 52.) The Court found it unnecessary to consider the motions to strike in the course of reaching its decision. Both motions are therefore **DENIED WITHOUT PREJUDICE**. The uncontested request for judicial notice is **GRANTED**.